UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                                        :
UNITED STATES OF AMERICA,                               :
                                                        :
                         Plaintiff,                     :      **MEMORANDUM & ORDER**
                                                        :
           -against-                                    :      11-CR-250 (DLI)
                                                        :
PRINCE GEORGE,                                          :
                                                        :
                         Defendant.                     :
------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

On May 31, 2011, Defendant Prince George ("Defendant") moved *in limine*, pursuant to Federal Rules of Evidence 702 and 403, to preclude the Government from eliciting expert testimony at trial concerning drug smuggling practices. The Government opposes Defendant's request. For the reasons set forth below, Defendant's motion is denied in its entirety.

## BACKGROUND

On or about March 1, 2011, Defendant arrived at John F. Kennedy International Airport ("JFK") from Port of Spain, Trinidad. Defendant was selected for a Customs and Border Protection ("CBP") examination and, after admitting to the CBP officers that the two pieces of luggage he was carrying were his, CBP officers found 1.8 kilograms of cocaine in the back wall of Defendant's suitcase.[1] Defendant was subsequently charged with knowingly and intentionally importing a controlled substance, *i.e.*, cocaine, into the United States from a place outside thereof, in violation of 21 USC §§ 952(a) and 960. On April 12, 2011, Defendant was arraigned on an indictment charging him with Importation of Cocaine, in violation of 21 U.S.C. §§ 960(a)(1) and

---

[1] The Government notes that among the items Defendant was carrying with him that day were an assortment of men's clothing, as well as two cellular telephones and a Western Union calling card.

960(b)(2)(B)(ii) and Possession of Cocaine with Intent to Distribute, in violation of 21 USC §§ 841(a)(1) and 841(b)(1)(B)(ii)(II).

## THE MOTION

The Government timely served notice on Defendant and the Court that it intends to introduce expert testimony concerning "common methods and standard operating procedures employed by international drug smugglers in bringing illegal narcotics into the United States." (Docket Entry 11, Gov't Opp. to Mot. in Limine at 1 ("Gov't Opp.").) Defendant moves to preclude this proposed expert testimony contending that it will not assist the trier of fact as required under Federal Rule of Evidence 702 and, to the extent the testimony is admissible, it is more prejudicial than probative, and thus, under Federal Rule of Evidence 403, is inadmissible. (Docket Entry 12, Def. Mot. in Lim. to Preclude ("Def. Mot").) The Government contends that, based on the facts and circumstances of this case, expert testimony that provides background information concerning the international drug trade and the common techniques used by drug couriers to avoid detection by authorities is both relevant and helpful to the average juror and satisfies the requirements of Rule 702. (Docket Entry 16, Gov't Response at 1 ("Gov't Resp.").) The Government further contends that such evidence is probative, outweighing any prejudice to Defendant.

Defendant argues that, while the Second Circuit has allowed expert testimony in drug cases, it has limited the use of such testimony to "occasions where the subject matter of the testimony is beyond the ken of the average juror." *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991); *United States v. Cruz*, 981 F.2d 659, 664 (2d Cir. 1992). Defendant contends that this is a straightforward importation case where the sole contested issue will be Defendant's knowledge, and that "there is simply nothing esoteric about the defendant's alleged

conduct that requires explanation about the methods of drug traffickers generally." (Def. Mot. at 2.)

In its opposition papers, the Government proffers that Special Agent Tara A. Mulkearns of the Department of Homeland Security, Homeland Security Investigations, will testify as an expert in international drug trafficking as to the following matters:

- The amount and purity of the cocaine recovered from Defendant in this case is consistent with distribution, rather than with personal use;
- The "wholesale" and "street values" of cocaine in the United States upon distribution;
- Trinidad and Tobago's status as a "source country," from which cocaine smuggling trips are routinely launched;
- When smuggling large quantities of cocaine into the United States, narcotics traffickers routinely employ individuals to serve as couriers;
- Normal packaging methods and areas within luggage where cocaine is routinely hidden by drug couriers; and
- Those involved in the international narcotics trade commonly use multiple cell phones and calling cards when communicating with drug traffickers in order to hide their identities from authorities.

(Gov't Opp. at 2-3.) The Government contends that expert testimony concerning the methods, techniques and operations routinely employed by international drug traffickers to avoid detection by authorities is admissible in this matter as it will be both relevant to the litigated issues, and helpful to the average juror. (Gov't Resp. at 3.)

During oral argument held on June 15, 2011, Defendant did not dispute the admissibility of the expert testimony as to the value of the cocaine found or the notion that the quantity was inconsistent with personal use. He argued, however, that the expert's testimony regarding Trinidad's status as a source country, the areas within luggage where cocaine is routinely hidden by drug couriers, and the use by international narcotics traffickers of multiple cell phones and calling cards, is not necessarily helpful to the jury. Instead, he argued that it poses the risk of suggesting that Defendant is "part of something larger" and of distracting the jury from the

3

fundamental issue in this case, which is Defendant's knowledge. Thus, Defendant argues, such testimony is potentially more prejudicial than probative.

At oral argument, the Government provided additional facts in support of its contention that the expert's testimony will not only provide context for the jury, but will also assist them in assessing the totality of the circumstances in this case, as methods of international drug trafficking is beyond the ken of the average jury. For example, Defendant claimed he had not been to Trinidad in over a decade. The veracity of this claim, according to the Government, is cast into doubt by the fact that his plane ticket was purchased one week in advance, by another individual, who also bought a ticket for himself, but never used it. Defendant stayed one week and returned with nearly two kilograms of cocaine in a suitcase he admitted was his. In addition, Defendant was in possession of two cell phones and a Western Union calling card. Relying on *United States v. Bruce*, 2003 WL 22221354 (2d Cir. Sept. 26, 2003) and *United States v. Yevakpor*, 501 F. Supp.2d 330, 334 (N.D.N.Y. 2006), the Government contends that the timing of the trip, the ticket purchase method, Defendant's statements, and the fact that Trinidad is a known source country for cocaine, justify the admission of the expert's testimony.[2] The government contends that international narcotics traffickers' use of these techniques is beyond the ken of the average juror. As such, the expert's testimony will permit the jury to put the facts and circumstances surrounding Defendant's trip to and from Trinidad, his ultimate arrest, and the seizure of 1.8 kilograms of cocaine in context and will assist the jury in determining whether Defendant acted knowingly and intelligently. The Government further argued that any prejudice to Defendant is outweighed by its probative value. Finally, the Government maintains that this

---

[2] Defendant has not challenged the admissibility of his statements made during the border search at JFK.

type of expert testimony has been held admissible by numerous courts within the Second Circuit as well as the Second Circuit Court of Appeals.

## ANALYSIS

*A. Federal Rule of Evidence 702*

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[3]

However, expert testimony should be limited to those situations in which the subject matter is beyond the ken of the average juror. *United States v. Locasio*, 6 F.3d 924, 936 (2d Cir. 1993). "While the proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of [this] Rule are satisfied, the district court is the ultimate gatekeeper." *United States v. Williams,* 506 F.3d 151, 160 (2d Cir. 2007) (citations and internal quotation marks omitted).

Although there may be a commonsense aspect to many strategies used by narcotics traffickers, the average juror cannot be expected to know all of the matters as to which the Government has indicated Special Agent Mulkearns will testify. *See Bruce*, 2003 WL 22221354, at *1 ("Police officers often know more about narcotics operations than do jurors . . . and customs officers similarly know more about narcotics couriers than does the average juror."). The average juror does not have specialized knowledge as to the importance of the weight and purity of cocaine, the wholesale and street values of cocaine, or the fact that Trinidad is a known

---

[3] Defendant does not challenge the qualifications of the expert nor the bases upon which she would form her opinion.

"source country" for narcotics. This is precisely the type of information which the Second Circuit has found admissible as being beyond the ken of the average juror. *United States v. Paige*, 2009 WL 1703220 (2d Cir. June 18, 2009); *United States v. McCloud*, 2008 WL 5265862 (2d Cir. Dec, 18, 2008); *United States v. Tapia-Ortiz*, 23 F.3d 738 (2d Cir. 1994).

Moreover, in *Tapia-Ortiz,* the court held that "expert testimony may be used 'on some occasions to explain even non-esoteric matters, when the defense seeks to discredit the government's version of events as improbable criminal behavior.'" 23 F.3d at 741. *See also United States v. Brown,* 776 F.2d 397, 400–02 (2d Cir. 1985), *cert. denied,* 475 U.S. 1141 (1986) (police officer permitted to describe typical drug buy in Harlem, including the role of a steerer, where the accused's defense was that he was on the scene but unaware of any drug transaction). Particularly where, as in this case, Defendant asserts that the sole contested issue at trial will be Defendant's knowledge that his suitcase contained drugs, expert testimony that provides background information concerning the international drug trade and the common techniques used by drug couriers to avoid detection by authorities will "assist the trier of fact to understand the evidence or to determine a fact in issue." *See* FED. R. EVID. 702.

Based on the foregoing analysis, the Court finds that the expert testimony proposed by the Government is admissible. As such, the Court next considers Defendant's argument that such expert's testimony is unduly prejudicial and should be excluded under Federal Rule of Evidence 403.

*B. Federal Rule of Evidence 403*

Federal Rule of Evidence 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The Second Circuit has held that a trial court must apply Federal Rule 403's balancing test to determine if the probative value of a particular piece of evidence is substantially outweighed by its potential for unfair prejudice. *See United States v. Dukagjini,* 326 F.3d 45, 54 (2d Cir. 2003), *United States v. Gilan*, 967 F.2d 776, 782 (2d Cir. 1992). To demonstrate that the evidence in question is more probative than prejudicial, the government must show that it would not "unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to convict on the basis of conduct not at issue in the trial." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006).

Defendant does not cite any cases to support his bald assertion that, to the extent the testimony is admissible, it is more prejudicial than probative under Federal Rule 403. Defendant is charged with importing cocaine and possessing it with the intent to distribute it. For the reasons discussed above, the probative value far outweighs any prejudice to Defendant, particularly because, while he admitted the suitcase was his, he denies knowing it contained cocaine. FED. R. EVID. 403. Thus, while expert testimony about narcotics importation and distribution may be prejudicial to Defendant, such testimony is not necessarily *unfairly* prejudicial. *See United States v. Nektalov*, 2004 WL 1469487 (S.D.N.Y. June 30, 2004.)

## CONCLUSION

For the reasons set forth above, Defendant's motion is denied in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
      July 5, 2011

/s/
DORA L. IRIZARRY
United States District Judge